1

2

3                                                             O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   TONY CLEMONS,                  )  Case No. CV 11-02702 DDP (JCGx)
                                    )
12              Plaintiff,          )  **ORDER DENYING MOTIONS TO DISMISS**
                                    )  **AND GRANTING MOTIONS TO CONTINUE**
13       v.                         )  **AND WITHDRAW AS COUNSEL**
                                    )
14   KELLER WILLIAMS REALTY,        )  [Docket Nos. 33, 34, 39, 50]
     INC., LUCKY CATS, INC., et     )
15   al.                            )
                                    )
16              Defendants.         )
                                    )
17                                  )
     _____  )
18

19       Presently before the court are: 1) Defendants M.D. Webb &

20   Associates & Jeff Book's Motion to Dismiss First Amended Complaint;

21   2) Defendants Litton Loan Servicing, L.P. & HSBC Bank USA, N.A.'s

22   Motion to Dismiss First Amended Complaint; 3) Plaintiff Tony

23   Clemons' Motion to Continue Trial Date and All Related Pretrial

24   Dates; and 4) Defendants Litton Loan Servicing, L.P. & HSBC Bank

25   USA, N.A.'s Motion to Withdraw as Counsel.  Having reviewed the

26   parties' moving papers, the court denies both Motions to Dismiss,

27   grants the Motions to Continue and Withdraw as Counsel, and adopts

28   the following Order.

**I.    BACKGROUND**

Plaintiff Tony Clemons ("Clemons") first filed suit against some of the current Defendants in California state court on December 23, 2010.  Those Defendants removed the action to federal court on March 30, 2011.  On October 28, 2011, the court granted Clemons' unopposed Motion for leave to file a First Amended Complaint ("FAC").  Clemons filed his FAC on November 14, 2011, adding Defendants Jeff Book ("Book"), M.D. Webb & Associates ("Webb"), Litton Loan Servicing, L.P. ("Litton"), and Alice McHugh ("McHugh"), who Clemons learned of through the initial Defendants' Federal Rule of Civil Procedure 26(a)(1) disclosures.  Defendants McHugh and HSBC Bank USA, N.A. ("HSBC") each filed answers to the FAC in December 2011.  Defendants Book and Webb, and Litton and HSBC, (collectively, "moving Defendants") then filed their respective Motions to Dismiss in January 2012.  Also in January 2012, Clemons filed his Motion to Continue, and Litton and HSBC filed their Motion to Withdraw as Counsel.

In his FAC, Clemons alleges four causes of action: 1) race discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 et seq.; 2) race discrimination in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq.; 3) race discrimination in violation of equal rights under the law, 42 U.S.C. § 1981; and 4) intentional interference with prospective economic relations.

As alleged in the FAC, Clemons is "by race and appearance an African American male," and a U.S. military veteran.  In July 2009, Clemons submitted an offer to purchase a home in Los Angeles, California with a $289,000 listing price.  Clemons had been pre-

2

1   approved for a $300,000 loan by the U.S. Department of Veterans

2   Affairs ("VA").  Clemons submitted the offer through his realtor,

3   Michael Hamilton ("Hamilton"), "who is also an African American"

4   and employed by "a predominantly African American real estate

5   firm."  Clemons and Hamilton then "came into contact" with

6   Defendants Paul Azdril ("Azdril") and McHugh, the selling agents of

7   the property, employed by Defendant Lucky Cats, Inc. ("Lucky

8   Cats").  (FAC ¶¶ 4, 19-23.)

9       From July to August 2009, Clemons and Hamilton submitted five

10  offers on the home.  Defendants "ignored or refused" each of the

11  offers.  At some point during "negotiations," Clemons learned "that

12  the property needed certain repairs, which [Clemons] would be

13  unable to perform under the terms and conditions of the VA loan."

14  Specifically, the VA loan "required that repairs be made by the

15  seller prior to purchase."  Therefore, on August 2, 2009, Clemons

16  increased his offer by $2,500 to cover the cost of repairs - for a

17  total offer of $281,500.  On August 5, 2009, "Azdril responded that

18  the seller did not want to make the repairs to the property and

19  rejected [the offer]."  On August 6, 2009, Clemons emailed a letter

20  to Defendant Anna Shady ("Shady"), "the Regional Operations Manager

21  of Keller Williams Realty" ("Keller"), identifying himself as an

22  "African American male."  Shady responded that she would work "with

23  the Market Center owned by Lucky Cats, Inc. to follow-up with

24  [Clemons'] previous offers."  (FAC ¶¶ 24-28.)

25      Around the same time, however, Defendants reduced the listing

26  price of the home from $289,000 to $259,000 - $22,500 less than

27  Clemons' August 2, 2009 offer.  Clemons then submitted two or three

28  more offers on the home, adjusted to the new listing price.

1  Defendants refused the offers "with little or no explanation."  In

2  November 2009, Defendants sold the home "to two persons with

3  Hispanic last names for $264,000" - $17,500 less than Clemons'

4  August 2, 2009 offer.  The buyers "financed the purchase with an

5  FHA mortgage that required repairs similar to the repairs that had

6  been required by [Clemons'] VA mortgage."  Clemons therefore

7  contends that Defendants unlawfully rejected his purchase offers

8  "because of discrimination based on his race," and that Defendants

9  Keller, Lucky Cats, Shady, Azdril, and Rick Cunningham interfered

10  with his "prospective economic relations" with property owner HSBC.

11  **II.  MOTIONS TO DISMISS**

12      **A.  LEGAL STANDARD**

13      Federal Rule of Civil Procedure 12(b)(6) requires courts to

14  dismiss claims for which no relief can be granted.  When

15  considering a 12(b)(6) motion, "all allegations of material fact

16  are accepted as true and should be construed in the light most

17  favorable to the plaintiff."  Resnick v. Hayes, 213 F.3d 443, 447

18  (9th Cir. 2000).  In Ashcroft v. Iqbal, the Supreme Court explained

19  that a court should first "identify[] pleadings that, because they

20  are no more than conclusions, are not entitled to the assumption of

21  truth."  129 S. Ct. 1937, 1950 (2009).  Next, the court should

22  identify the complaint's "well-pleaded factual allegations, . . .

23  assume their veracity and then determine whether they plausibly

24  give rise to an entitlement to relief."  Id.; see also Moss v. U.S.

25  Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) ("In sum, for a

26  complaint to survive a motion to dismiss, the non-conclusory

27  factual content, and reasonable inferences from that content, must

28  be plausibly suggestive of a claim entitling the plaintiff to

1 relief."  (internal quotation marks omitted)); <u>Mejia v. EMC</u>

2 <u>Mortgage Corp.</u>, No. CV 09-4701, 2011 WL 2470060, at *5 (C.D. Cal.

3 June 16, 2011) ("The standards for pleading discrimination claims

4 are no higher than the relaxed notice pleading standard of Fed. R.

5 of Civ. Pro. 8(a)."  (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S.

6 506, 512 (2002), and <u>Edwards v. Marin Park</u>, Inc., 356 F.3d 1058,

7 1062 (9th Cir. 2004))).

8         **B.    DISCUSSION**

9         Absent "circumstantial evidence of discriminatory motive," a

10 plaintiff establishes a prima facie FEHA case by showing that: 1)

11 "she is a member of a protected class"; 2) "she applied and was

12 qualified for a housing accommodation"; 3) "she was denied such

13 housing accommodation"; and 4) "similarly situated individuals not

14 in a protected class applied for and obtained housing."  <u>McDonald</u>

15 <u>v. Coldwell Banker</u>, 543 F.3d 498, 503 (9th Cir. 2008).  The

16 standard is the same for Clemons' FHA claim.  <u>See</u> <u>id.</u> at 505 & n.7

17 ("With respect to the FHA claim, the standard of proof and analysis

18 applied in a disparate treatment case are the same as those applied

19 in a FEHA case.").  Similarly, the elements of a § 1981 claim are:

20 "(1) plaintiff is a member of a protected class; (2) plaintiff

21 attempted to contract for certain services; and (3) plaintiff was

22 denied the rights to contract for those services."  <u>Mejia</u>, 2011 WL

23 2470060, at *6 (citing <u>Lindsey v. SLT Los Angeles, LLC</u>, 447 F.3d

24 1138, 1145 (9th Cir. 2006)).

25         In their nearly identical Motions to Dismiss, Defendants Book

26 and Webb, and Litton and HSBC, argue that Clemons fails to

27 adequately allege: 1) any discriminatory acts they committed; 2)

28 their knowledge of Clemons' race; and 3) that Clemons was a

1   qualified purchaser.  The court disagrees.  Although Clemons could

2   have provided additional details - which Clemons sets forth in his

3   Opposition and exhibits - his FAC still meets the minimal pleading

4   standards of Federal Rule of Civil Procedure 8(a).  As discussed,

5   Clemons alleges that each of the Defendants ignored or refused his

6   offers, including an offer for $281,500, then reduced the listing

7   price to $259,000, and finally sold the home to buyers with

8   Hispanic last names for $264,000.  Clemons thereby adequately

9   alleges potentially discriminatory acts by moving Defendants.

10       As to Defendants' knowledge of his race, Clemons alleges that

11   he first submitted an offer in July 2009, through his African

12   American realtor working at a predominantly African American real

13   estate firm.  Clemons further alleges that he and his realtor then

14   "came into contact" with the property's selling agents.  Finally,

15   before Defendants refused Clemons' last offers, Clemons informed

16   Defendant Shady - a manager for Defendant Keller - that he was

17   African American.  Accordingly, while Clemons does not expressly

18   plead moving Defendants' knowledge of his race, it is reasonable to

19   infer that they may have learned of his race from the other

20   Defendants involved in the managing and sale of the property.

21       As to the "qualified" purchaser element, moving Defendants

22   correctly note that this requires a plaintiff to "meet the terms of

23   the seller."  See McDonald, 543 F.3d at 503.  Here, Defendants

24   claim that Clemons never offered to meet the seller's term that the

25   seller not be required to make any repairs to the property.

26   Defendants argue that this case is therefore identical to McDonald,

27   where the court held that a plaintiff was not a qualified

28

6

1   purchaser, because her offers included a "seller carryback"

2   provision that the seller had made clear he would not accept.

3        In <u>McDonald</u>, however, a divided Ninth Circuit panel affirmed a

4   grant of <u>summary judgment</u> by the district court.  In doing so, the

5   majority found that it was an "undisputed fact . . . that the

6   seller refused to engage in a seller carryback provision." <u>Id.</u> at

7   504; <u>see also</u> <u>id.</u> at 502 (finding that the selling agent and broker

8   "had not done seller carrybacks for years and felt it was not

9   necessary in their market").  The dissent, to the contrary, would

10  have found that the alleged refusal of the seller to engage in any

11  carryback was "sufficiently disputed," and therefore reversed the

12  grant of summary judgment.  <u>Id.</u> at 509 n.5 (Hawkins, J., concurring

13  in part and dissenting in part); <u>see also</u> <u>id.</u> at 508 ("In

14  concluding that the seller 'refused to engage in a seller carryback

15  provision,' the majority contradicts the seller's own testimony.");

16  <u>id.</u> at 507 (finding that, even adjusting for the "alleged defect,"

17  plaintiff's "offer was <u>still</u> equivalent to the ultimate selling

18  price"); <u>id.</u> at 502 n.1 (majority opinion) (rejecting the dissent's

19  contention that carrybacks were a "condition common to residential

20  real estate transactions").

21       In short, the outcome of <u>McDonald</u> depended on the majority's

22  acceptance of a finding at summary judgment that the seller's

23  reason for refusal – i.e. the term he required for a qualified

24  purchase – was not genuinely disputed.  Such a finding, however,

25  would be inappropriate here at the motion to dismiss stage, where a

26  reasonable inference from Clemons' FAC is that Defendants' alleged

27  requirement for a qualifying purchase was pretextual.  As

28  discussed, Clemons claims that Defendants responded to his $281,500

1  offer, including $2,500 to cover repairs, by reducing the listing

2  price $30,000 and ultimately selling the property for $17,500 less

3  than his offer.  The timing and size of these reductions therefore

4  call into question Defendants' purported justification that the

5  seller was in fact entirely unwilling to make repairs - indeed, so

6  much so, that the seller was willing to risk and eventually accept

7  tens of thousands of dollars less for the property.  Of course,

8  once the facts are in, it may become clear that the alleged

9  requirement of "no seller repairs" was a genuine term of purchase,

10  and that Clemons was therefore not a qualifying purchaser.  But the

11  court cannot resolve this potential factual dispute now, when it

12  must still take as true all of Clemons' allegations and the

13  reasonable inferences therefrom.[1]  The court therefore denies the

14  moving Defendants' Motions to Dismiss.

15  **III. MOTIONS TO CONTINUE AND WITHDRAW**

16      Clemons moves to continue the trial date and all related

17  pretrial dates, as certain Defendants recently were served with the

18  FAC and filed the instant Motions to Dismiss.  Fact discovery then

19  closed on February 1, 2012.  The court finds good cause to grant

20  the Motion.  See Fed. R. Civ. P. 16(b)(4).  Although Clemons could

21  have been more prompt, he was sufficiently diligent in amending his

22  _____

23      [1]  Defendants Litton and HSBC also appear to suggest that
    Clemons cannot plead discrimination claims, because the eventual
    buyers were also members of a protected class. (See Reply at 6

24  ("In addition, Plaintiff alleges that the property was sold to
    individuals in a protected class.  Thus, Plaintiff fails to state a

25  prima facie case under the McDonald standard.").)  Such an
    interpretation of the elements for a discrimination claim would, of

26  course, be absurd.  Discrimination between protected classes is
    unlawful as well, and does not require that similarly situated

27  individuals not belong to any group potentially discriminated
    against because of race, religion, gender, or other protected

28  status.

1  Complaint to add the new Defendants, after they were identified in

2  the original Defendants' initial disclosures.  He was also then

3  sufficiently diligent in serving the FAC and filing this Motion.

4  Although the court is sympathetic to Defendants' concerns about

5  ongoing reputational harm, this does not constitute sufficient

6  prejudice here to change the analysis.  The court, however, will

7  not grant any further continuances, barring exceptional

8  circumstances.

9       Finally, no party has filed an opposition to Defendants Litton

10 & HSBC's Motion to Withdraw as Counsel, and the Defendants have

11 apparently obtained new counsel.  The court therefore grants the

12 Motion.

13 **IV.  CONCLUSION**

14      For the foregoing reasons, the court DENIES Defendants Book

15 and Webb's[33], and Defendants Litton and HSBC's, Motions to

16 Dismiss [50].  The court GRANTS Plaintiff Clemons' Motion to

17 Continue [34], and hereby continues the trial dates as listed

18 below.  The court also GRANTS Litton and HSBC's Motion to Withdraw

19 [39].

20      FACT DISCOVERY CUT-OFF 05-02-12

21      EXPERT DISCOVERY CUT-OFF 07-02-12

22      LAST DAY TO FILE DISCOVERY MOTIONS 07-02-12

23      LAST DAY TO FILE DISPOSITIVE MOTIONS 07-02-12

24      FINAL PRE TRIAL CONFERENCE 09-17-12 at 11:00 a.m.

25      6 DAY JURY TRIAL 09-25-12 at 9:00 a.m.

26 IT IS SO ORDERED.

27 Dated:March 23, 2012

                                    DEAN D. PREGERSON
28                                  United States District Judge